# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | CHAPTER 11 |
|     RICHARD R. KITCHIN, JR. AND DONNA KITCHIN, | : | |
|     DEBTORS. | : | BANKRUPTCY NO. 09-17891-MDC |

## MEMORANDUM

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

### INTRODUCTION

Before this Court for consideration is the objection of Richard and Donna Kitchin (collectively, the "Debtors") to the proof of claim of the Joan I. Glisson Trust (the "Objection"). The Joan I. Glisson Trust (the "Trust") asserts a claim against Richard Kitchin in the amount of $257,047.63 (the "Claim") arising from unsatisfied mortgage loan to Kitchin Associates, LLC ("Kitchin LLC"), the proceeds of which were used to purchase a property located at 1400 Chester Pike, Sharon Hill, Pennsylvania (the "Property"). The Trust asserts that Richard Kitchin is personally liable for Kitchin LLC's loan based on two theories of liability: (1) participation liability; and (2) alter-ego liability. The Debtors object to the Claim on the basis that Richard Kitchin is not the alter ego of Kitchin LLC and did not directly participate in the alleged tortious conduct resulting in the non-payment of the loan, to the extent such conduct even transpired.

Following evidentiary hearings on August 10 and August 24, 2010, and having considered the issues raised by the parties at the hearing and in their filings, this Court finds that the Trust has met its burden with regard to alter ego liability against Richard Kitchin. On this basis, the Debtors' Objection will be denied.

**FACTUAL BACKGROUND**

  *A.  The Conveyance of the Property from the Trust to Kitchin LLC*

The Trust is a Pennsylvania trust created by Joan Glisson (the "Trust"). Ms. Glisson is the widow of Maurice Glisson (collectively, with Joan Glisson, the "Glissons"). The Trust's primary asset was the Property.

On July 11, 2001, the Trust sold the Property to Kitchin LLC, a Pennsylvania limited liability company that is no longer doing business. At all times, Todd Kitchin ("Todd") and Richard Kitchin ("Richard") were the members of Kitchin LLC and each held a 50% ownership interest in the entity. To finance the purchase of the Property, Kitchin LLC issued a note in the amount of $300,000.00 in favor of the Trust (the "Note") that was secured by a mortgage in the Property (the "Mortgage," collectively with the Note, the "Loan Documents"). The Debtors were not parties to the transaction. However, Richard, along with Todd, did execute the Loan Documents in his capacity as a member of Kitchin LLC.

On the date of the sale, the Trust executed a Commercial Pledge Agreement in favor of Greater Delaware Valley Savings Bank d/b/a Alliance Bank (the "Bank"). The purpose of the Commercial Pledge Agreement was to assign the Note and Mortgage as replacement security for the Bank's existing mortgage on the Property (the "M&J Mortgage"). The M&J Mortgage was security for a loan in the amount of $300,000.00 from the Bank to M & J Roofing Supplies, Inc. (the "M&J Loan"). M & J Roofing Supplies, Inc. is a roofing business operated by the Glissons. Pursuant to the Commercial Pledge Agreement, the Bank was to hold the Mortgage and Note until the M&J Loan was paid off at which point the Bank was to return the Mortgage and Note to the Trust.

  *B.  Satisfaction of the Mortgage by the Bank*

On March 31, 2003, the Glissons paid off the M&J Loan. In response, the Bank caused the Mortgage to be marked satisfied rather than return it and the Note to the Trust. The Trust took no action in response to the Bank's action. The Trust admits that "[t]he Bank thereby destroyed the Trust's collateral protection of the Mortgage for the debt evidenced by the Note executed and delivered by Kitchin LLC to the Trust … and thereby destroyed the Trust's collateral protection in the real estate at

2

1400 Chester Pike, Sharon Hill, Delaware County, Pennsylvania." Objection, Exh. A. ¶¶ 43-44 [Docket No. 63].

### C. *The Sale of the Property from Kitchin LLC to CLAM Enterprises*

On July 21, 2004, Todd signed on behalf of Kitchin LLC a contract of sale whereby it agreed to convey the Property to Interstate Batteries ("Interstate"). Pursuant to the contract of sale, Interstate agreed to pay $402,000.00 to Kitchin LLC. Despite express terms in the Mortgage prohibiting the transfer of the Property without the written consent of the Trust, Kitchen LLC did not notify the Trust of the proposed sale.[1] Kitchin LLC never attempted to obtain the Trust's consent to the CLAM Sale and sold the Property without the Trust's consent.

At some point, a settlement statement was prepared summarizing the proposed transaction. The settlement statement states that the gross amount due to Kitchin LLC at closing would be $404,761.54. From this amount, $31,960.48 was to be deducted to account for settlement charges and unpaid borough and county taxes. The settlement statement included no reference to any amounts due for the payoff of the Note. Less these amounts, the settlement statement stated that upon closing Kitchin LLC would receive $372,801.06 in cash. Both Richard and Todd testified that they reviewed the settlement statement and were surprised by the omission of the Mortgage. However, both took no action and chose to rely on the closing agent.

At closing on March 3, 2005, Kitchin LLC conveyed the Property to CLAM Enterprises, LLC ("CLAM") in lieu of Interstate for $402,000.00 (the "CLAM Sale"). No explanation was provided for the substitution of CLAM for Interstate. The net proceeds of the CLAM Sale were $372,801.06. All of which was deposited into Kitchin LLC's operating account.

### D. *Disposition of the Proceeds of the CLAM Sale*

From the record, it is not clear when Richard and Todd realized that their closing agent did not

---

[1] ¶ 11 of the Mortgage provides, in relevant part,
"<u>NO TRANSFER</u>. Mortgagor will not sell, transfer or assign and will not permit the direct or indirect conveyance, sale, transfer or assignment or other disposition of title to or any equitable interest in the Mortgaged Property or any part thereof, either voluntarily or by operation of law without the prior written consent of Mortgagee, which consent Mortgagee may in its discretion withhold. … "

plan to deduct the amount due pursuant to the Loan Documents from the proceeds of the CLAM Sale. At the August 24th Hearing, Todd testified that he was surprised by the amount of the settlement check stating that he expected to receive "about a third of that." Upon receiving an apparent windfall, Richard and Todd did nothing. They did not notify the settlement agent, the Trust or the Glissons.

According to Todd's testimony, he and his father then discussed how they would handle the windfall. Both Richard and Todd believed that Kitchin LLC was not obligated to pay off the entire Note but could opt to continue to make monthly payments. Despite this understanding, Richard claims to have expressed to Todd his preference to use the proceeds to pay off the remaining amount due under the Note. However, Richard's testimony is contradicted by both his son's testimony as well as documentary evidence provided to this Court. Todd testified that contrary to his father's assertion, he did not recall receiving an instruction to use the proceeds to pay off the Note. Rather, Todd stated that at first they agreed to leave the proceeds in the operating account of Kitchin LLC. At some point shortly thereafter, they reconsidered and decided to use the proceeds to help offset the liabilities of Chester Auto Parts Co. Inc. ("Chester Auto Parts").[2] Contrary to his father's testimony, Todd stated that he and his father specifically discussed using the proceeds to pay the vendors of Chester Auto Parts.

According to the testimony of Todd, he and his father disagreed about how the payments to the vendors of Chester Auto Parts should be treated. Todd claims that he wanted the transfers to be treated as loans from Kitchin LLC to Chester Auto Parts whereas Richard wanted the payments to be treated as distributions. Ultimately, it appears that Richard won the argument. Documentary evidence shows that for tax purposes the proceeds were treated as distributions and split according to their ownership shares. As reflected by Kitchin LLC's 2005 Form 1065, Richard and Todd Kitchin each received a distribution from Kitchin LLC in the amount of $170,454. However, in reality, the allocation of the proceeds is less than clear.

---

[2] The parties have provided little information with regard to Chester Auto Parts. From the record, it appears that Chester Auto Parts was a related entity that ran the Kitchins' automotive supply business. For some time, the business premises of Chester Auto Parts was located at the Property. The exact nature of its ownership is unclear but it appears that Richard and Donna Kitchin were among Chester Auto Parts' ownership group.

4

Subsequent to the CLAM Sale, it appears that Kitchin LLC made at least six payments to either Chester Auto Parts or its creditors (the "CAP Payments"). The CAP Payments include: (1) a payment in the amount of $47,192.76 dated March 7, 2005 to "Autocraft;" (2) a payment in the amount of $42,433.91 dated March 10, 2005 to "Autocraft;" (3) a payment in the amount of $1,117.65 dated March 18, 2005 to Chester Auto Parts; and (4) three payments in the total amount of $82,869.49 made on undisclosed dates to "MAWDI."[3] In addition to the direct payments from Kitchin LLC's operating accounts, Todd testified that an additional $150,000.00 of the CLAM Sale proceeds was transferred from Kitchin LLC's operating account to an ING checking account and was later used to pay the creditors of Chester Auto Parts. From the record before this Court, this Court cannot infer how the CAP Payments should have been attributed to each of Kitchin LLC's members or how the CAP Payments may be reconciled with the distributions claimed in Kitchin LLC's 2005 Form 1065.

## LEGAL DISCUSSION

### A.     *The Parties' Respective Burdens*

Allowance of a proof of claim is governed by 11 U.S.C. § 502(a) and Federal Rule of Bankruptcy Procedure 3001(f). The Third Circuit has defined each party's respective burden in proof of claim litigation.

> "The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant."

*In re Allegheny Int'l Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) (citations omitted).

---

[3] "MAWDI" is apparently an abbreviation of an entity named Middle Atlantic Warehouse that the parties admit to be a supplier of Chester Auto Parts.

The Debtors' Objection states that Kitchin LLC maintains a separate corporate existence and therefore Richard may not be held liable for its debts. This Court finds that the Debtors' Objection is sufficient to refute the Claim's *prima facie* validity and therefore shifts the burden to the Trust to prove its claim by a preponderance of the evidence. *See In re Martin*, 413 B.R. 12, 15 (Bankr. D.N.H. 2008) (finding evidence that creditor's claim was against a non-debtor entity that maintained a separate corporate existence to be sufficient to shift the burden to the creditor to prove its claim by a preponderance of the evidence). This Court will now consider whether the Trust met its burden with regard to participation liability and alter ego liability.

### B. *Participation Liability*

Participation liability is a separate and distinct basis of liability from alter ego liability. *See Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 621 (1983) (explaining difference between alter-ego liability and participation liability). To establish participation liability, the Trust must establish (1) the existence of tortious conduct and (2) knowing participation in or personal direction of the tortious conduct by Richard. *See USTAAD Systems, Inc. v. iCAP Intern. Corp.*, Civ. No. 09-1149, 2010 WL 2838593, at *5 (M.D. Pa. Jul. 16, 2010) (recognizing that to maintain unjust enrichment claim against a corporate officer, the claimant must show the officer "actually participated in the misconduct"); *Alpart v. General Land Partners, Inc.*, 574 F. Supp. 2d 491, 501 (E.D. Pa. 2008) ("The question is whether the alleged wrong was a result of an active, *knowing participation* by the defendants.") (emphasis added); *Peerless Heater Co. v. Mestek, Inc.*, Civ. No. 98-6532, 2000 WL 637082, *11 (E.D. Pa. May 11, 2000) ("The touchstone for personal liability under Pennsylvania case law, therefore, is *knowing participation* in the tortious conduct.") (emphasis added). In essence, the corporate officer is treated as a joint tortfeasor with the corporate entity. *See, e.g., Ronald A. Katz Technology Licensing, L.P. v. Verizon Communications, Inc.*, Civ. No. 01-5627, 2002 WL 31834833, at *2 (E.D. Pa. Dec. 18, 2002) (recognizing that limited liability does not protect corporate officers who "may be liable as joint tortfeasors for acts committed in the regular course of the corporation's business"); *Kaites v. Com. of Pa., Dept. of Environmental Resources*, 529 A.2d 1148, 1149 (Pa. Cmwlth. 1987) (equating participation liability with joint tortfeasor liability).

The Trust claims that Richard acted tortiously when he either failed to disclose to the Trust the CLAM Sale or failed to disclose the Mortgage to the title company at the closing. Typically, participation liability must be premised on affirmative conduct. By premising Richard's liability on his omission, the Trust defeats its own claim. As stated by the Pennsylvania Supreme Court, "corporate officers and directors may not be held liable for mere nonfeasance." *Wicks v. Milzoco Builders, Inc.,* 503 Pa. 614, 622-23 (1983); *see also McCracken v. Daimler Chrysler Motors Co. LLC*, Civ. No. 07-2202, 2008 WL 920344, at *3 (E.D. Pa. Apr. 3, 2008) ("Nonfeasance is not sufficient to support a claim against a corporate officer under Pennsylvania's participation theory."). As with every rule, an exception exists. Liability for nonfeasance may exist if an independent, non-contractual duty to speak is established. *See Loeffler v. McShane,* 539 A.2d 876, 879 (Pa. Super. 1988) (finding that a title insurance company owed a duty, independent of any contractual obligation, to use reasonable care in handling the mortgagor's financial resources).[4]

This exception is consistent with general principles of tort law. In the context of fraudulent conduct, the failure to disclose may not be conflated with making an affirmative misstatement. *See, e.g., Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 611 (3d Cir. 1995) (stating "to be liable for material nondisclosures, a party must have a duty to speak"); *Sewak v. Lockhart*, 699 A.2d 755, 759 (Pa. Super. 1997) (holding that "mere silence without a duty to speak will not constitute fraud."); *Sevin v. Kelshaw*, 611 A.2d 1232, 1236 (Pa. Super. 1992) ("Mere silence in the absence of a duty to speak ... cannot suffice to prove fraudulent concealment."). Except in circumstances involving latent defects not reasonably discoverable, an affirmative duty to disclose arises only in the context of a fiduciary relationship between the parties or a similar relationship of trust and confidence. *See Chiarella v. United States*, 445 U.S. 222, 227-28 (1980); *Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 612 (3d Cir. 1995); Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 656

---

[4] This Court notes that the court in *Loeffler* does not identify the legal basis for this obligation. The court acknowledged in its decision "appellant has not denied that this duty exists or that this duty was violated." *Loeffler v. McShane*, 539 A.2d 876, 880 (Pa. Super. 1988). Had the appellant contested this duty, it is conceivable the court may have reached a different result.

(W.D. Pa. 1999). Here, no such relationship exists. By failing to identify an independent, non-contractual duty to speak, the Trust's theory of participation liability fails. *See, e.g., In re Aldan Industries, Inc.,* Bky. No. 00-10360, 2000 WL 357719, at *5 (Bankr. E.D. Pa. Apr. 3, 2000) ("I am not required to give more than passing consideration to an argument that is devoid of any legal support").

Implicitly acknowledging the shortcomings of its tort claim, the Trust states "[r]emaining silent in the face of specific *contractual obligations* to speak and then taking the money is the ultimate 'participation' and deliberately tortious." Nowhere in any of the Trust's motion papers or its arguments before this Court did it identify the specific legal theory, let alone cite a single case, that explains how the violation of a contractual duty may be "deliberately tortious." Admittedly, the terms of the Loan Documents do not expressly obligate Kitchin LLC to notify the Trust of any impending sale. However, the express terms of the Mortgage render Kitchin LLC's right to transfer the Property contingent upon the consent of the Trust. To effectuate this term, it may be argued that this Court should imply a contract term obligating Kitchin LLC to provide notice to the Trust. *See, e.g., Fremont v. E.I. DuPont DeNemours & Co.,* 988 F. Supp. 870, 874 (E.D. Pa. 1997) (discussing application of contractual duty of good faith and fair dealing); *Rimmer v. 48-50 Enterprises, Ltd. (In re Bradstreet)*, Bky. No. 01-18357, 2002 WL 1349588 (Bankr. E.D. Pa. Jun. 3, 2002) (addressing doctrine of necessary implication to construe parties contractual obligations). However, because neither party disputes whether Kitchin LLC committed a material breach of the Loan Documents, this Court need not address whether Kitchin LLC breached the Mortgage when it failed to notify the Trust of the impending sale. Rather, this Court raises these issues to illustrate that the Trust's tort claims are predicated on contractual duties.

As stated by the Third Circuit, a claimant is barred from tort recovery "when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3rd Cir. 2001); *see also Werwinski v. Ford Motor Co.,* 286 F.3d 661, 671 (3d Cir. 2002) (recognizing that plaintiffs are prohibited "from recovering in tort economic losses to which their entitlement flows only from a contract.") (citations omitted). Because the Trust relies upon the terms of the Loan Documents to

8

establish the duty it alleges Richard to have breached, this Court finds that the Trust's tort claim is barred by the gist-of-the-action doctrine. *See Harold ex rel. Harold v. McGann*, 406 F. Supp. 2d 562, 577-78 (E.D. Pa. 2005) (dismissing plaintiff's fraudulent conduct claims on ground that "[e]ven if these alleged misrepresentations could constitute fraud, it was fraud concerning the performance of contractual duties"); *Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833 (E.D. Pa. 2000) ("if the claim essentially alleges a breach of duties that flow from an agreement between the parties, the claim is contractual in nature, whereas if the duties allegedly breached were of a type imposed on members of society as a matter of social policy, the claim is essentially tort-based.").

To the extent this Court has on its own initiative found case law addressing similar facts, courts have declined to find evidence of tortious conduct. *See, e.g., U.S. v. Thorn*, 17 F.3d 325, 328 (11th Cir. 1994) (reversing defendant's conviction on the ground that "the failure to list the [creditor's] mortgage in the title insurance policy did not constitute the 'mak[ing]' of a 'false statement or report.'"); *In re Splawn*, 376 B.R. 747 (Bankr. D.N.M. 2007) (finding no evidence of fraud where debtors had relied on title company to determine whether proceeds of sale should be applied to unrecorded mortgage that the debtors knew to exist); *Cardillo v. Andover Bank (In re Cardillo)*, 169 B.R. 8 (Bankr. D.N.H. 1994) (denying mortgagee's § 1307 motion on ground that debtor's failure to satisfy mortgage from proceeds of sale did not amount to bad faith). For these reasons, this Court finds that as a matter of law the Trust's participation liability claim fails.

### C. *Alter Ego Liability*

Kitchin LLC is a Pennsylvania limited liability company created pursuant to the Pennsylvania Limited Liability Company Law of 1994. 15 Pa. C.S.A. § 8901 *et seq*. Pennsylvania courts recognize a strong presumption against holding the shareholders of a corporation liable for the obligations of the corporation. *See In re Blatstein*, 192 F.3d 88, 100 (3d Cir. 1999). The same presumption applies for members of a limited liability company. *See McDonald v. Damenti's, Inc. (In re LMcD, LLC)*, 405 B.R. 555, 560 (Bankr. M.D. Pa. 2009) (*citing* Committee Comment to 15 Pa. C.S.A. § 8904(b)). Applying the equitable remedy of alter ego liability, Pennsylvania courts will allow the presumption to be set aside and

the corporate veil to be pierced to "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat the public purpose or shield someone from a liability for a crime." *Village at Camelback Property Owners Assn. Inc. v. Carr*, 538 A.2d 528, 533 (Pa. Super. 1988) (*citing Zubik v. Zubik*, 384 F.2d 267 (3d Cir. 1967)).

The leading case addressing alter ego liability under Pennsylvania law is *Ashley v. Ashley*, 393 A.2d 637 (Pa. 1978). *See Ragan v. Tri-County Excavating, Inc.*, 62 F.3d 501, 508 (3d Cir. 1995) (relying on the "*Ashley* standard"); *Regent Nat. Bank. v. Dealers Choice Automotive Planning, Inc*., 1999 WL 357364 (E.D. Pa. Jun 2, 1999) (stating *Ahsley* "set forth guiding principles for a court to use when determining whether it should disregard a corporation's corporate form"). As summarized by *Ashley*:

> "This legal fiction of a separate corporate entity was designed to serve convenience and justice and will be disregarded whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless. We have said that whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded.

*Ashley v. Ashley*, 393 A.2d 637, 641 (Pa. 1978).

Roughly speaking, the *Ashley* test may be broken into two elements: (1) the party exercised domination and control over the entity; and (2) injustice will result if the corporate fiction is maintained despite a unity of interests between the entity and its principal. *See Craig v. Lake Asbestos of Quebec, Ltd*, 843 F.2d 145, 150 (3d Cir. 1988) (stating "piercing the corporate veil depends on a finding of dominance. Only after there has been such a finding does one reach the fraud or injustice issue."); *In re Nutri/System, Inc.*, Bky. No. 93-12725, 1994 WL 96963, at *5 (Bankr. E.D. Pa. Mar 23, 1994) (summarizing Ashley standard as a two-part test). For the second element, no single test has been enunciated. Rather, courts will look to whether the totality of the circumstances warrants piercing the corporate veil. *See Ragan v. Tri-County Excavating, Inc.,* 62 F.3d 501, 516 (3d Cir. 1995) (identifying factors to be relied upon when determining alter ego liability); *In re Diloreto*, 2006 WL 2974156, at *3 (E.D. Pa. Oct. 13, 2006) ("Under Pennsylvania law, courts apply a 'totality of the circumstances' test when determining whether to pierce the corporate veil and impose alter ego liability."); *Hudson United*

10

*Bank v. Pena*, Civ. No. 03-0158, 2005 WL 736603, at *7 (E.D. Pa. Mar. 30, 2005).

Here, this Court finds that the Trust has presented clear and convincing evidence that Richard directed Kitchin LLC to engage in conduct injurious to the Trust. This Court finds Richard's attempt to deflect personal liability on the basis that he did not control Kitchin LLC to be without merit. The only evidence supporting this position is his self-serving statement stating that his involvement in the transaction was limited to instructing his son to apply the proceeds of the CLAM Sale to pay off the Note. His testimony is contradicted by both his son's testimony and independent documentary evidence.

Contrary to Richard's assertion, Todd testified that he did not recall receiving his father's alleged instruction. Moreover, Todd stated that he had not only consulted with his father regarding the decision to retain the proceeds or apply them to Chester Auto Part's debts, but that it was his father's preference to have the payments made on behalf Chester Auto Parts treated as a distribution rather than a loan from Kitchin LLC to Chester Auto Parts. Ultimately, it appears that Richard won out and the payments made on behalf of Chester Auto Parts were not treated as loans. Todd's account is supported by the documentary record. In Schedule K-1 of Kitchin LLC's 2005 Form 1065, the proceeds of the CLAM Sale were treated as distributions to Richard and Todd. The effect of these transactions was to transfer money from one Kitchin-controlled entity to pay the debts of another Kitchin-controlled entity resulting in harm to the Trust. On this basis, this Court finds that Richard exercised sufficient control over Kitchin LLC to satisfy the first prong of the *Ashley* test.

Having established control, this Court also finds that the totality of the circumstances warrants piercing the corporate veil. Looking to the substance of the CLAM Sale and the CAP Payments, this Court recognizes that both Richard and Todd treated the debts of Chester Auto Parts and Kitchin LLC as indistinguishable. *See Cureton v. National Collegiate Athletic Ass'n*, 198 F.3d 107, 127 fn.5 (3d Cir. 1999) (recognizing that pursuant to "the traditional application of the alter ego doctrine, corporate form may be disregarded when the corporation is "the mere instrumentality or business conduit of another corporation or person"). Neither Richard nor Chester Auto Parts provided adequate consideration in exchange for the CAP Payments. *See Otto Zollinger v. Qualitex, Inc.*, Civ. No. 84-1630, 1989 WL 3473,

11

at *9 (E.D. Pa. Jan. 17, 1989) (finding that failure to provide adequate consideration in exchange for transfers weighed in favor of alter ego liability).  By applying the proceeds of the CLAM Sale to the debts of a related entity they also controlled, Richard and Todd looted Kitchin LLC for personal rather than corporate purposes.  *See Ashley v. Ashley*, 393 A.2d 637, 641 (Pa. 1978) ("whenever one in control of a corporation uses that control, or uses the corporate assets to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded.")  Further, no corporate records document the CAP Payments let alone show that they were authorized by corporate action.  Richard, along with his son, disregarded the corporate form and acted as though the assets of Kitchin LLC were theirs to manage and distribute without regard to its creditors.  *See In re Blatstein*, 192 F.3d 88, 107 (3d Cir. 1999) (finding that "such unity of interest, ownership and function between [the debtor] and the non-debtor corporations that the separate personalities of the individual and the corporations no longer exist.").  Whether these facts support the inference that Kitchin LLC and Chester Auto Parts operated as a single entity is not before this Court.  *See, e.g., McDonald v. Damenti's, Inc. (In re LMcD, LLC)*, 405 B.R. 555, 560 (Bankr. M.D. Pa. 2009) (discussing "single entity theory").  However, this conduct is sufficient to establish that Richard may be held liable for Kitchin LLC's debts on a theory of alter ego liability.

## SUMMARY

This Court finds that the Trust has established that Richard Kitchin may be held liable for the debts of Kitchin LLC as its alter ego.  For this reason, the Debtors' Objection is **DENIED**.

BY THE COURT:

MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

DATED:  NOVEMBER 9, 2010